IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Terrie Sullivan and Veronica )
Rodriguez, individually and on )
behalf of others similarly )
situated, )
 )
    Plaintiffs, )
    v. )   No. 21 C 6084
 )
Liberty Mutual Insurance )
Company )
 )
    Defendant. )

Memorandum Opinion and Order

Terrie Sullivan and her wife, Veronica Rodriguez, filed this action against Liberty Mutual, the insurer they claim discriminated against them based on their races (Sullivan is Black and Rodriguez is Latina) and their sexual orientation in processing their claim for damage to their house caused by flooding and contamination with "Category 3 wastewater."[1] On behalf of themselves and nationwide and Illinois classes, plaintiffs seek compensatory and punitive damages as well as declaratory, injunctive, and punitive relief under the Fair Housing Act, 42 U.S.C. § 3604; the Illinois Human Rights Act, 775 ILCS 5/10-102; Sections 1981 and 1982 of the Civil Rights Act of 1866; state

---

[1] According to the complaint, Category 3 wastewater, also known as "black water," includes "sewage, rising flood waters, and seawater, as well as river and ground water." Compl. at 5, n.7.

contract law; and Section 155 of the Illinois Insurance Code. Defendants move to dismiss the complaint in its entirety, arguing that plaintiffs: 1) lack standing to pursue injunctive and declaratory relief on behalf of themselves or the putative classes because they cancelled their policy prior to filing suit; 2) fail to state an actionable claim under federal law because their allegations to not give rise to a plausible inference of intentional discrimination or any causal nexus between the alleged discrimination and defendant's handling of their claim; 3) fail to state a claim under the IHRA because they failed to exhaust their administrative remedies; and 4) filed their state claims outside the one-year limitations period their policy establishes. For the following reasons, the motion is granted in part.

I.

According to the complaint, whose factual allegations I take as true for present purposes, in September, October, and November of 2020, shortly after plaintiffs purchased their home, their toilet overflowed, contaminating the floors, cabinetry, drywall, furniture, and other personal belongings in several areas of the house. After each occurrence, plaintiffs called a plumber, who inspected the plumbing and determined that tree roots clogging the drain had caused the toilet to back up. Plaintiffs then called a general contractor, Chris Alexa, to ascertain the extent of the damage and perform water remediation services. Alexa found

2

substantial damage: hardwood floors were warped; walls were contaminated; the front door was damaged; and mold had grown in the vents. He determined that the hardwood of an entire floor needed replacing, as did the kitchen cabinetry and likely the kitchen counters, among other repairs. And because furniture and other items had come into contact with contaminated water, plaintiffs had to dispose of these items as well.

On November 16, 2020, plaintiffs filed a claim for insurance coverage to recover for their significant losses. Just eight days later, defendant's insurance adjuster, Colby Sherbafi, called to inform plaintiffs that their claim would be denied because the damage was caused by a faulty basement sump pump. Defendant's position was demonstrably baseless, plaintiffs allege, as their home had neither a basement nor a sump pump.

In January of 2021, after further communications with plaintiffs and their contractor Alexa, Sherbafi reversed course and told plaintiffs that their losses would be covered after he confirmed a few details with their plumber. But weeks turned to months with no progress on plaintiffs' claim and no further word from Sherbafi. In March of 2021, plaintiffs discovered that Sherbafi had left defendant's employ, so they went back to the drawing board with a second adjuster, James Orchard, who took an entirely new coverage position on behalf of defendant: that a physical inspection of the property was required to determine

whether plaintiffs' losses would be covered. Plaintiffs resisted an in-person visit at that time, given the state of the Covid-19 emergency, particularly since defendant's website indicated that live video calls were available as an alternative to such inspections, and since Sherbafi had previously indicated that a favorable coverage determination was forthcoming. On April 10, 2021, defendant denied plaintiffs' claim, identifying "sump pump backup" as the basis for the denial.

The same day, plaintiffs filed a complaint with defendant's "Presidential Services Team," detailing the events up to that point. As of the date of the complaint in this case, they had received only a form message stating that their claim was under review. Meanwhile, plaintiffs agreed to a physical inspection by two separate individuals who confirmed the diagnosis plaintiffs' plumber had made five months earlier: tree roots had clogged the drain and caused the toilet backup and overflow. At that point, defendant agreed to cover the claim, but it paid only a fraction of the hundreds of thousands of dollars plaintiffs claimed in losses.

Further inspections and investigations ensued. Each plaintiff provided an examination under oath ("EUO") attesting to the couple's losses. Defendant's investigator allegedly "expressed skepticism" about the value of certain items they claimed to have lost. Compl. at ¶ 51. Shortly thereafter, defendant's attorney

4

called with further questions about plaintiffs' claim. Plaintiffs answered all of his questions truthfully, but the following week, they received a letter stating that their claim would be closed unless they submitted to yet another examination under oath. Two days later, defendant denied the majority of their claim. The denial letter stated that plaintiffs "[were] refusing to comply with the conditions of the policy, refusing to attend the EUO, failure to exhibit the damage [sic] property, and not proceeding under the policy of insurance." Compl. at 56. These putative reasons for denial were groundless, plaintiffs claim, as they had complied with all terms of their policy.

    Later, plaintiffs discovered facts that led them to believe that discrimination was the real reason defendant gave them the runaround and ultimately denied the majority of their claim. Alexa, plaintiffs' contractor, relayed to plaintiffs conversations he had had with Sherbafi early on in the claims process, during which Sherbafi allegedly called plaintiff Sullivan a "nigger carpet-muncher," referred to plaintiff Rodriguez as a "dumb Puerto Rican bitch," and made other disparaging comments about plaintiffs based on their races and sexual orientation. Plaintiffs sent defendant a letter complaining about Sherbafi's comments and about other elements of the claims process they perceived as discriminatory, such as the skepticism defendant's adjuster expressed at the value of the items they claimed to have lost. Defendant pledged to

5

investigate the matter fully, but the investigation it actually conducted was a sham, with defendant's long-standing outside counsel concluding in a matter of days that the complaint was unfounded.

Plaintiffs allege that their injury is ongoing, as they have been unable to repair their home fully and have experienced emotional distress as a result of defendant's treatment. Plaintiffs also claim that their experience is not unique, and that it is the result of defendant's pervasive failure to prevent and remedy explicit and implicit bias among its claim handlers. In this connection, plaintiffs allege that defendant is aware that claims data across the insurance industry show systemic bias and discrimination by claims handlers against minorities, but it allows the problem to persist because it is economically advantageous to do so.

## II.

Defendant's lead argument is that because plaintiffs canceled their policy prior to initiating this action, they lack standing to pursue prospective equitable relief. Constitutional standing is a threshold jurisdictional issue that I must resolve before reaching the merits of plaintiffs' claims. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (2017). To invoke the powers of the federal courts, Article III requires that plaintiffs establish three elements: they "must have (1) suffered an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc., v. Robins*, 578 U.S. 330, 338 (2016). Importantly, "standing is not dispensed in gross; plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). *See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought") (citation omitted).

No one doubts that plaintiffs have standing to pursue monetary damages for the injuries they claim to have suffered. But defendant argues that because there is no possibility—given plaintiffs' cancellation of their policy—that plaintiffs will be subjected to any harm resulting from defendant's future conduct, there is no threat of injury that an injunction could redress. *See Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017). Stated differently, defendant contends that plaintiffs lack a "personal stake" in the outcome of their request for prospective equitable relief—a *sine qua non* for Article III standing. This argument finds support in cases such as *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), where the Supreme Court explained that to establish a sufficient "personal

7

stake" in a request for injunctive relief, plaintiffs must show "a real and immediate threat" of future injury by the defendant. *O'Shea*, 414 U.S. at 496; *Lyons*, 461 U.S. at 103.

In *O'Shea*, a class of plaintiffs challenged racially discriminatory sentencing practices and sought to enjoin the defendants from engaging in conduct they claimed was unconstitutional. But the Court held that the case had to be dismissed for lack of standing, concluding that although certain class members claimed to have been injured by the defendant's alleged constitutional violations, their past experiences were insufficient to suggest "a real and immediate threat of repeated injury." *O'Shea* at 495-96. "Past exposure to illegal conduct," the Court explained, "does not in itself show a present case or controversy regarding injunctive relief...if unaccompanied by any continuing, present adverse effects." *Id*. at 495-96. The Court reaffirmed these principles in *Lyons*, noting further that "[t]he emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Lyons*, 461 U.S. at 107, n.8.

The Seventh Circuit has applied these principles frequently to dismiss, on standing grounds, requests for injunctive relief. *See, e.g., Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 395 (7th Cir. 2019) ("[w]e consistently have understood *Lyons* to foreclose claims for equitable relief based on lack of standing

8

where 'the possibility' that the plaintiff 'would suffer any injury as a result of' the challenged practice was 'too speculative.'") (quoting *Robinson v. City of Chi.*, 868 F.2d 959, 966 (7th Cir. 1989)); *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("[t]o have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical') (quoting *Lyons*, 461 U.S. at 102)); *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) (citing cases applying *Lyons* to hold that plaintiffs who could not establish a real threat of future injury lacked standing to pursue injunctive relief). These and other cases in this line govern the outcome here.

It is true, as plaintiffs observe, that in putative class actions involving at least one named plaintiff with standing to pursue a damages claim that meets the injury-in-fact requirement, courts have sometimes deferred past the pleadings stage the question of whether the named plaintiff also has standing to pursue prospective relief. *See, e.g., Laurens v. Volvo Cars of North America, LLC*, 868 F.3d 622 (7th Cir. 2017); *Wacker Drive Exec. Suites, LLC v. Jones Lang LaSalle Americas (Illinois), LP*, No. 18-CV-5492, 2019 WL 2270000, at *4 (N.D. Ill. May 28, 2019); and *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565 at *7 (N.D. Ill. Sept. 6, 2017). In other cases, such as *Santiago v. RadioShack Corp.*, No. 11 C 3508, 2012 WL 934524, at *4 (N.D. Ill. Feb. 10, 2012), and

*Leiner v. Johnson & Johnson Consumer Companies, Inc*., 215 F. Supp. 3d 670, 672 (N.D. Ill. 2016) (Bucklo, J.), courts have framed the issue as a merits-based question concerning the plaintiff's entitlement to a particular form of relief, rather than as a jurisdictional question of standing. Cases in this latter line have followed the reasoning of *Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008), where the Seventh Circuit held that an inmate no longer incarcerated at the facility whose conduct he sought to enjoin nevertheless had Article III standing to pursue an injunction on behalf of a class. *See* 546 F.3d at 795 ("[a]lthough the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing.... Arreola did have standing to pursue his lawsuit. Whether he is entitled to relief on any or all of [his] claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions[.]"). But neither the *Laurens* nor the *Arreola* line of cases supports deferral of the standing issue here.

*Laurens* was a classic consumer fraud action—the type of case in which an individual plaintiff's claim for injunctive relief is ordinarily moot because once the plaintiff unveils the defendant's alleged fraud, she is unlikely to be deceived again. *See Conrad*, 869 F.3d at 542. The plaintiffs in *Laurens* were a husband and wife who purchased a Volvo hybrid vehicle advertised as having a twenty-

10

five-mile battery range, but which they claimed "averaged a puny eight to ten miles of battery-only driving." 868 F.3d at 623. The defendant offered the wife—who held title to the vehicle but was not originally a party to the suit—a full refund upon return of the vehicle, then moved to dismiss the case on the ground that neither party had standing: the husband was not the vehicle's owner, and any potential injury to the wife was wholly redressed by the refund offer before she ever joined the suit. The district court agreed and dismissed the case, but the Seventh Circuit reversed, reasoning that because the wife did not accept the defendant's offer, "the question whether the underlying dispute has been settled is a live one." Moreover, the court reasoned, "the fact that the Laurenses are seeking to serve as class representatives complicates matters." *Id*. at 625. In this connection, the court pointed to the Supreme Court's holding in *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980), that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied."

The question here, however, is not whether plaintiffs' request for injunctive relief is mooted by the resolution of their dispute, but rather whether they had standing to pursue prospective relief in the first instance. Indeed, their claim for injunctive relief is closer to the one whose dismissal the Seventh Circuit

11

upheld in *Holmes v. Fisher*, 854 F.2d 229, 232 (7th Cir. 1988). The *Holmes* plaintiff was arrested without a warrant and detained for eight days before being taken to court for probable cause and bail hearings. *Id*. at 230. After his release, he sued for equitable relief and damages under § 1983, and he sought to represent a class of "past, present, and future suspects" in his county for the purpose of seeking declaratory and injunctive relief. The district court dismissed the class claims for lack of standing, leaving only the plaintiff's individual damages claim.

On interlocutory review, the Seventh Circuit upheld the dismissal of the equitable claims, calling them "dead on arrival, moot the day the complaint was filed." The court rejected the argument that *Geraghty* supported the plaintiff's standing to pursue injunctive relief, emphasizing that *Geraghty* "does not breathe life into a stillborn case." *Id*. So too, here: Plaintiffs' cancellation of their policy prior to filing suit extinguished any possibility of future injury redressable by enjoining defendant's prospective conduct, leaving them with no interest in their claim for an injunction. *See id*. at 233 ("[w]hen this case was filed, Holmes had no interest in the outcome, to the extent he sought equitable relief.").

Nor is plaintiffs' injunctive claim so ephemeral as to raise concerns about evading review absent a departure from normal standing rules. Their claim is distinct from the consumer fraud

12

claims in *Block*, for example, where literal application of Article III's "live controversy" requirement would make it impossible for any consumer to pursue injunctive relief for the fraud alleged. The *Block* court acknowledged that a consumer who becomes aware of a seller's fraud ordinarily cannot pursue injunctive relief based on that fraud. 2017 WL 3895565, at *7. But it went on to hold, relying on *Laurens*, that when such a consumer seeks to represent class members who have not yet discovered the seller's fraud, her claim "may qualify for an exception to the mootness doctrine for conduct that is capable of repetition yet evading review." *Block*, 2017 WL 3895565, at *7. The court emphasized that in *Laurens*, "[t]he Seventh Circuit's decision to delay ruling was due in part to a concern that granting defendant's request to strike the request for injunctive relief would mean that no plaintiff in this type of suit would ever be able to pursue injunctive relief." *Id*. But that concern does not arise in this case. Again, *Holmes* offers the better analogy, where the court reasoned:

> To permit the certification of a class headed by a "representative" who did not have a live controversy with the defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions. And why? Holmes can pursue his claim for damages, and the precedent will set the rule to be followed in the future. Or some other litigant may file suit with a live claim. There is no need to throw away a venerable constitutional rule just to retain a replaceable champion.

13

*Holmes*, 854 F.2d at 233. Similarly here, to the extent there is merit to plaintiffs' claim that their injuries are the result of ongoing discriminatory conduct by defendant, an action to enjoin those practices must be pursued, if at all, by a litigant who is at risk of future injury.

In short, nothing in *Geraghty, Laurens,* or *Arreola* alters the result that *O'Shea*, *Lyons*, and their progeny compel in the circumstances here: plaintiffs' request for injunctive and declaratory relief must be dismissed for lack of standing.

The remainder of defendant's motion, however, which seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of plaintiffs' claims under the Fair Housing Act, 42 U.S.C. §§ 1981 and 1982, and state contract, discrimination, and insurance law, is denied. The theme common to defendant's arguments targeting the federal claims is that plaintiffs do not adequately allege either the intentional discrimination or the but-for causation that these claims require. But the statements plaintiffs attribute to Sherbafi evince animus based on plaintiffs' race and sexual orientation. Further, the stated basis for defendant's initial denial of plaintiffs' claim—a faulty basement sump pump in a home allegedly lacking either a basement or a sump pump—raises the specter of pretext. These allegations, taken together with the complaint's remaining allegations and construed in the light most favorable to plaintiffs, raise a sufficient inference of both discrimination

14

and a nexus to defendant's alleged misconduct to entitle plaintiffs to discovery. None of the cases defendant cites compels a contrary conclusion.

Plaintiffs' state claims similarly withstand defendant's arguments for dismissal. Defendant posits that the IHRA claim must be dismissed for failure to exhaust administrative remedies. But failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional flaw. *Mojapelo v. Avis Car Rental*, 2018 WL 1143586 (C.D. Ill. Mar. 2, 2018) (citing Salas v. Wis. Dep't of Corr., 493 F.3d 913, 921-22 (7th Cir. 2007) and *Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000). A complaint is subject to dismissal based on an affirmative defense only when the plaintiff pleads herself out of court "by alleging (and thus admitting) the ingredients of [the] defense." *Weiler v. Vill. Of Oak Lawn*, 86 F. Supp. 3d 874, 881 (N.D. Ill. 2015). That is not the case here. Plaintiffs do not dispute that claims under certain provisions of the IHRA require exhaustion of administrative procedures that they did not invoke. But their claim, they insist, arises under Article 3 of the IHRA, which is not subject to an exhaustion requirement. This response triggers a new argument in defendant's reply: that the type of claim plaintiffs assert is not actionable under Article 3 of the IHRA. That argument may ultimately have merit, but because it is not obvious from the face of plaintiffs' complaint, and

15

because defendant first raised the argument in its reply, I decline to resolve the issue at this stage.

For similar reasons, defendant's argument that plaintiffs' claims for breach of contract and bad faith are untimely cannot be resolved at the pleadings. Defendant insists that these claims were not filed within the policy's one-year limitations period, but this argument, too, is an affirmative defense resting on facts outside of the complaint. Specifically, defendant argues that the proofs of claim plaintiffs submitted—which, in their view, tolled the policy's limitations period—were not filed "in the form required by the policy." Reply, ECF 21 at 14. That is not a basis for dismissal on the record before me.

For the foregoing reasons, defendant's motion to dismiss is granted in part. Plaintiffs' claims for injunctive and declaratory relief are dismissed for lack of standing. The motion is otherwise denied.

**ENTER ORDER:**

*Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: June 10, 2022